UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TIMOLYN SMITH-EALY                                CIVIL ACTION NO. 5:12-CV-2538

VERSUS                                            JUDGE S. MAURICE HICKS, JR.

FAIRFIELD MANAGEMENT and                          MAGISTRATE JUDGE HORNSBY
D&B MANAGEMENT

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Record Document 31] filed by Fairfield Property Management (hereafter referred to as "FPM") on all claims by the Plaintiff, Timolyn Smith-Ealy (hereafter referred to as "Smith-Ealy"), pursuant to Federal Rule of Civil Procedure 56. For the reasons hereafter assigned, the Motion for Summary Judgment filed by FPM is hereby **GRANTED**.

## BACKGROUND

Smith-Ealy was employed as a Property Manager by D&B Management from October 2010 until December 31, 2011. At the end of 2011, D&B Management, the general partners of which owned many of the properties under its management, decided to no longer manage its properties. Rather, the partners decided to outsource the management of its properties to FPM. Many of D&B Management's former employees, including Smith-Ealy, were retained by FPM in the same or similar positions. Rec. Doc. 31-2 at ¶ 2. Beginning on January 1, 2012, Smith-Ealy served as the manager of the properties at Fair Park Terrace and Park Place Manor Apartments. Id. at ¶ 3. In this capacity, Smith-Ealy was responsible for the direction and oversight of property operations and employees. Specifically, property managers were expected to have the "ability to work in a professional, courteous, cooperative, tactful, and patient manner with residents, FPM

employees, vendors, suppliers, and members of the public." Id. at ¶ 3.

In late April and early May of 2012, other FPM employees notified FPM's Director of Human Resources, Kim Pellegrin, of various policy violations that had been committed by Smith-Ealy. The reported violations included Smith-Ealy speaking rudely and yelling at tenants and employees, instructing employees not to contact their supervisors with concerns, being frequently late for work, taking extended lunch breaks, using her cell phone excessively while at work, threatening and arguing with tenants, and making inappropriate comments regarding other FPM employees. Id. at ¶ 5. Upon further investigation, Pellegrin determined that the reports from FPM employees were accurate, and further determined that Smith-Ealy failed to appropriately address concerns raised by owners of property adjacent to Fair Park Terrace Apartments. Id. at ¶ 6. On May 2, 2012, Smith-Ealy met with Pellegrin and FPM's Director of Affordable Housing, Annie Johnson ("Johnson") to discuss the violations of policy. Smith-Ealy did not offer any acceptable explanation for her behavior. Id. at ¶ 7.

During the afternoon of May 2, 2012, Smith-Ealy telephoned Pellegrin to raise several complaints about her employment, which were focused on her relationship with her co-workers. Id. at ¶ 8. Smith-Ealy did not mention any concerns regarding sexual harassment, discrimination, or retaliation. Id. at ¶ 8. These allegations were further investigated by Pellegrin through interviewing additional FPM employees. The interviews not only contradicted Smith-Ealy's complaints, but detailed additional inappropriate and abusive behavior by her. Id. at ¶ 8.

During the same week, while processing FPM's payroll for the time period ending on April 30, 2012, Pellegrin discovered that Smith-Ealy inappropriately approved payroll for

several employees under her supervision, even though all of the employees' time had not been entered. Id. at ¶ 9. This error would have led to FPM issuing improper paychecks to employees had Pellegrin not caught the mistake. Id. at ¶ 9. Smith-Ealy does not dispute that she incorrectly approved payroll. Id. at ¶ 9. Smith-Ealy met with Pellegrin and Johnson to discuss her inappropriate behavior, the complaint raised by Smith-Ealy on May 2, 2012, allegations that she brought a taser to work, and the payroll errors. Id. at ¶ 10. Smith-Ealy was issued a "First Written Warning" for her inappropriate behavior in the workplace. Id. at ¶ 11. She was issued a "Second Written Warning" for her payroll errors. Id. at ¶ 12.

On May 16, 2012, Pellegrin received a phone call from Charles Dunnigan, a FPM employee, who reported that he had been approached by a resident of Fair Park Terrace Apartments. Dunningan reported that the resident told him that Smith-Ealy asked her if she and Dunnigan were "having sex." Id. at ¶ 13. Smith-Ealy's questioning of the tenant occurred in the presence of her relatives and other tenants. Id. at ¶ 13. On May 23, 2012, another FPM employee, Robert Sullivan reported to Pellegrin that Smith-Ealy was "driving him crazy." Id. at ¶ 14.

A meeting was held on May 24, 2012 between Edward Taylor, one of the managing partners of FPM, Pellegrin, and Smith-Ealy. Id. at ¶ 15. During the meeting, Smith-Ealy discussed the written warnings that she had received and a HUD Real Estate Assessment Center inspection of the Fair Park Terrace Apartments. Id. Smith-Ealy also provided a list of "situations" which she asked to be investigated further, including an incident where a tenant was allegedly dressed inappropriately, an allegation that Dunnigan was borrowing money from tenants, and an alleged "sexual conversation" among employees at an apartment complex where Smith-Ealy never worked. Id. at ¶ 16. However, Smith-Ealy did

not make any claims that she had been the victim of sexual harassment, discrimination, or retaliation. Id. at ¶ 15.

On May 25, 2012, an employee of Fair Park Terrace Apartments reported that Smith-Ealy had moved her sister to the top of an apartment waiting list, in violation of FPM's standard procedure. Id. at ¶ 19. On June 4, 2012, Smith-Ealy was the subject of another reported incident. Id. at ¶ 20. A tenant reported that she attempted to discuss ongoing renovations of her mother's apartment, who was also a tenant at the complex. The tenant reported that Smith-Ealy had failed to update her mother about the renovations, and asked that the work be scheduled at a specific time. Id. at ¶ 20. The tenant stated that rather than address her concerns, Smith-Ealy issued a "Notice of Infraction" to the tenant for disturbing or harassing management. Id. at ¶ 20. The tenant reported that Smith-Ealy intimidated the residents at Fair Park Terrace Apartments and often acted inappropriately. Id. at ¶ 21. The tenant also reported that Smith-Ealy told her that a maintenance employee had turned in the tenant for standing "over him in a suggestive manner" while he was performing work in her apartment. Id. at ¶ 21. The mother of the tenant reported that she was "hurt" by Smith-Ealy's actions and was "very scared" of being evicted from the apartments. Id. at ¶ 21.

On June 7, 2012, Pellegrin and Johnson met with Dunnigan, the FPM maintenance employee, who denied reporting the alleged inappropriate behavior by the tenant. Id. at ¶ 22. That same day, Pellegrin and Johnson also met with Robert Sullivan, another FPM employee, who witnessed the incident between Smith-Ealy and the tenant who received the Notice of Infraction. Sullivan reported that he never witnessed the tenant threaten Smith-Ealy. Id. at ¶ 23. He also reported that Smith-Ealy had been performing work for

another company during FPM work hours, and she frequently left the office during work hours. Id. at ¶ 23.

Based on Smith-Ealy's inappropriate behavior toward tenants and FPM employees, her employment with FPM was terminated. Id. at ¶ 24. On June 7, 2012, Pellegrin met with Smith-Ealy and delivered an "Employee Counseling Form" processing her termination. Id. at ¶ 25. Smith-Ealy filed a Charge of Discrimation with the Equal Employment Opportunity Commission ("EEOC"), alleging sexual harassment. Id. at ¶ 26. On June 14, 2012, the EEOC closed its file and issued a Dismissal and Notice of Right to Sue." Id. at ¶ 27. Smith-Ealy received the letter on June 19, 2012. Id. at ¶ 28.

Smith-Ealy filed the instant suit on September 19, 2012. Id. at ¶ 29.

## LAW AND ANALYSIS

**I. Legal Standard**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## II. Analysis

### A. Title VII Claim

A plaintiff who makes a Title VII claim must first exhaust all administrative remedies, including filing a timely charge with the EEOC and receiving a statutory notice of right to sue. 42 U.S.C. § 2000e-5; Taylor v. Books A Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002); Henson v. Bell Helicopter Textron, Inc., 128 Fed. Appx. 387, 390-391 (5th Cir. 2005). The filing of an EEOC charge is a "precondition to filing suit in district court." Id. Following the EEOC dismissing a charge if the plaintiff chooses to commence a lawsuit based on the alleged discrimination, the suit must be filed within 90 days of **receiving** the notice of dismissal and right to sue letter. 42 U.S.C. § 2000e-5(f)(1); Sparks v. Lowe's Home Center, Inc., 341 F. Supp. 2d 671, 673 (E.D. Tex. 2004). The Fifth Circuit has repeated held that 90-day time period is to be strictly construed. *See* Taylor at 379.

In the instant matter, Smith-Ealy filed a charge with the EEOC. Rec. Doc. 31-2 at ¶ 27. She received a Right to Sue Letter from the EEOC on June 19th, 2012. Rec. Doc. 31-2 at ¶ 28. Accordingly, Smith-Ealy had until September 17, 2012 to file the instant lawsuit within the 90-day deadline. The instant lawsuit was commenced on September 19, 2012,

6

or 92 days after the receipt of the Right to Sue letter. See Rec. Doc. 1. Therefore, Smith-Ealy's lawsuit with regard to her sexual harassment claim under Title VII is untimely. Accordingly, the Motion for Summary Judgment in favor of FPM is **GRANTED**.

**B. Slander and Defamation of Character Claims**

The Complaint is unclear regarding whether Smith-Ealy intended to make a claim for "slander and defamation of character" against FPM. To cover all bases, the Court will rule upon these causes of action under the belief that Smith-Ealy intended to plead a cause of action for slander and defamation. Smith-Ealy stated in her deposition that her sole bases for her slander and defamation claims were the write-ups that she received. See Rec. Doc. 31-4 at p. 21.

To establish a cause of action on a defamation claim, the plaintiff must prove four elements: (1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. In other words, Smith-Ealy must prove that FPM, with actual malice or other fault, published a false statement with defamatory words which caused her injury. If any of the four elements required to establish this tort is missing, the cause of action fails. Finley v. Florida Parish Juvenile Detention Center, 2013 WL 1344576, *9 (E.D.La. 2013) *citing* Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So.2d 196, 198 (La. 1980).

Smith-Ealy's claims fail to meet the minimal threshold required for a cause of action for the tort of defamation. Smith-Ealy provides the Court no evidence that the internal write-ups were published to anyone outside of the organization. Courts have consistently held that internal statements between employees in the course of their employment are "not

statements communicated or publicized to third persons so as to constitute publication for a defamation claim." See Finley at *10. Because Smith-Ealy fails to provide any evidence of publication, her cause of action for defamation of character fails. Accordingly, FPM's Motion for Summary Judgment on this issue is **GRANTED**.

**CONCLUSION**

Based on the foregoing analysis, the Court finds that Smith-Ealy's Title VII claims were untimely filed. Additionally, there is no evidence of slander and defamation of her character. Accordingly, FPM's Motion for Summary Judgment is **GRANTED**. A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 10th day of July, 2014.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE